**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

                **v.**                **09-CR-55A(Sr)**

**GLANCE ROSS,**

        **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with Title 28, United States Code, Section 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #11.

The defendant, Glance Ross, was charged in three counts of a six count Indictment returned against eight defendants with having violated Title 21, United States Code, Section 841, Title 21, United States Code, Section 846 and Title 18, United States Code, Section 1956. Dkt. #1. Defendant Ross also faces a forfeiture count (Count 5), pursuant to Title 21, United States Code, Sections 853(a)(1) and 853(a)(2).

Presently pending before this Court is defendant Ross' motion to suppress evidence obtained pursuant to electronic surveillance. Dkt. #102. For the following reasons it is recommended that the motion be denied.

Necessity

The defendant argues that the government's success in employing normal investigative procedures rendered electronic surveillance unnecessary. Dkt. #102, p.3. More specifically, the defendant states that:

> confidential informants had provided real time evidence of criminal activity; the sources' information was corroborated by controlled purchases; purchases were documented by eye witness testimony by the agents and consensual recordings; prior electronic surveillance had identified members of the conspiracy and their means of operation. Thus by the time that Glance Ross's phones were wiretapped there was no longer any need for electronic surveillance. As a result the wiretap orders did not comply with the restrictions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. §§ 2510-2522 because the government failed to establish that the alternative investigative techniques employed had been unsuccessful or were unlikely to succeed in uncovering the full extent of the defendant's criminal activities.

Dkt. #102, pp.32-33.

The government responds that the applications in support of the electronic surveillance orders explain the limitations of confidential sources and physical surveillance in developing evidence against the defendant and other known and then unknown members of the narcotics conspiracy and afforded a proper basis on which to conclude that electronic surveillance was proper. Dkt. #122, pp.21-22.

As an initial matter, the Court rejects the government's argument that defendant lacks standing to raise this issue. Dkt. #122, pp.15-18. As a target of the intercept order and an individual whose voice is alleged to be heard on intercepted

communications, defendant is an aggrieved person pursuant to 18 U.S.C. § 2518(10)(a). See 18 U.S.C. § 2510(11) (defining aggrieved person as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed.").

18 U.S.C. § 2518(1)(c) requires that each application for an order authorizing or approving the interception of a wire, oral, or electronic communication shall include:

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

The affidavit of Special Agent Reynolds of the FBI seeking continued authorization for the continued interception of wire communications over a cellular telephone number known to be utilized by defendant Glance Ross describes in great detail the history of the investigation to date and information obtained based on prior wiretap orders issued by various district judges in this district, use of confidential informants, and physical surveillance. Dkt. #102-2. Special Agent Reynolds also explains that normal investigative techniques have been unsuccessful, or appear unlikely to succeed in identifying the full scope and nature of the illegal activities, or are too dangerous to employ. Dkt. #102-2. For example, Special Agent Reynolds informs the Court that confidential sources have been unable to purchase cocaine from other suspected members of the drug conspiracy, and how the suspected members of the

drug conspiracy, including defendant Ross, evaded and even confronted physical surveillance by law enforcement.

Basically, the defendant is requesting a review of Judge Skretny's decision in issuing the Intercept Orders. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore, the admonition of the Second Circuit Court of Appeals is appropriately applied in this process wherein the Court stated:

> "In reviewing a ruling on a motion to suppress wiretap evidence, we accord deference to the district court." *Miller*, 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231). Our role in reviewing the issuance of a wiretap order is not to make a *de novo* determination of the sufficiency of the application, "but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United States*, 528 U.S. 875 (1999).

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert. denied* 498 U.S. 906 (1990), addresses the issues raised by the defendants herein on the issue of whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to sacrifice brevity and set forth that Court's ruling in detail:

> Section 2518(1)(c) requires that an application for such an interception shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ." Similarly, section 2518(3)(c) requires the judge to whom an application for a wiretap is made to determine, as a condition of

-4-

authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . ."

The application for the wiretap in this case was based upon a thirty-six page affidavit by DEA agent Timothy J. Sullivan dated May 27, 1987. Flores contends that when the application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62

L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo* determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made." *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner. The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
>> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190 (citations omitted).
>
> *Scibelli*, 549 F.2d at 226.

*Id.* at 231-232 (brackets included); *See also United States v. Diaz,* 176 F.3d 52, 111 (2d Cir.), *cert. denied sub nom Rivera v. United States*, 528 U.S. 875 (1999).

As in *Torres*, the defendant's claim that traditional law enforcement methods had already achieved extraordinary success in penetrating the conspiracy is unpersuasive. 901 F.2d at 231. Giving proper deference to Judge Skretny's review and acceptance of the affidavit of Special Agent Reynolds sworn to December 8, 2008 in support of the application for the Intercept Orders and his decision to grant said applications and issue the orders in question, it is concluded that Judge Skretny "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous." *Diaz,* 176 F.3d at 111. Therefore, it is recommended that defendant's motion to suppress based on this claim be denied.

Minimization

The defendant argues that the government failed to properly minimize non-pertinent conversations. Dkt. #102, p.33. More specifically, the defendant argues that

> From the government's own statistics we see that the overwhelming number of conversations overheard by the agents were deemed to be non-pertinent. Yet the government's agents listened to virtually every conversation, every conversation in its entirety, some 1735 conversations.

Dkt. #102, p.41.

The government responds that the vast majority of calls intercepted were less than two minutes long and that the vast majority of non-pertinent calls exceeding two minutes were minimized. Dkt. #122, p.24.

18 U.S.C. § 2518(5) provides that the "authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter. . . ." In addressing this complex concept of "minimization," the United States Supreme Court has held that:

> The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.
>
> We agree with the Court of Appeals that blind reliance on the percentage of nonpertinent calls intercepted is not a sure guide to the correct answer. Such percentages may provide assistance, but there are surely cases, such as the one at bar, where the percentage of nonpertinent calls is relatively high and yet their interception was still reasonable. The reasons for this may be many. Many of the nonpertinent calls may have been very short. Others may have been one-time only calls. Still other calls may have been ambiguous in nature or apparently involved guarded or coded language. In all these circumstances agents can hardly be expected to know that the calls are not pertinent prior to their termination.
>
> In determining whether the agents properly minimized, it is also important to consider the circumstances of the wiretap. For example, when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise. And it is possible that many more of the conversations will be permissibly interceptable because they will involve one or more of the co-conspirators. . . .
>
> Other factors may also play a significant part in a particular case. For example, it may be important to determine at exactly what point during the authorized period the interception was made. During the early stages of surveillance the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be

> intercepted thereafter. Interception of those same types of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type. Other situations may arise where patterns of nonpertinent calls do not appear. In these circumstances it may not be unreasonable to intercept almost every short conversation because the determination of relevancy cannot be made before the call is completed.

*Scott v. United States*, 436 U.S. 128, 140-141 (1978); *see also United States v. Principe*, 531 F.2d 1132, 1140 (2d Cir.), *cert. denied* 430 U.S. 905 (1976).

In the instant case, accepting the government's assertion that the target telephone was utilized by Glance Ross as sufficient to establish standing to challenge minimization, the Court finds no basis to believe that the intercepted calls were not properly minimized. For example, on one ten day report, only 19 of 916 calls exceeded two minutes and 8 of those call were deemed pertinent. Dkt. #102-5, p.2. On another ten day report, only 15 of 653 intercepted calls exceeded two minutes, with six of those deemed pertinent and one of them minimized. Dkt. #102-5, p.4. On a third ten day report, only 9 of 505 intercepted calls exceeded two minutes, with 4 of those deemed pertinent and one of them minimized. Dkt. #102-5, p.6. As this evidence does not suggest that a substantial number of non-pertinent calls were intercepted unreasonably, it is recommended that defendant's motion to suppress be denied.

Therefore, it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

        **SO ORDERED.**

DATED:    Buffalo, New York
              December 14, 2010

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**