**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────────────

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

                  **v.**                **09-CR-55A(Sr)**

**GLANCE ROSS,**
**and**
**DAMONE BROWN**
              **Defendants.**
─────────────────────────────────────────


### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with Title 28, United States Code, Section 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #11.


The defendant, Glance Ross, was charged in three counts of a six count Indictment returned against eight defendants with having violated Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance); and Title 18, United States Code, Section 1956 (laundering of monetary instruments).  Dkt. #1. Defendant Ross also faces a forfeiture count pursuant to Title 21, United States Code, Sections 853(a)(1) and 853(a)(2).


The defendant, Damone Brown, was charged in two counts of the indictment with having violated Title 18, United States Code, Sections (laundering of monetary instruments).   Dkt. #1.

Presently pending before this Court are defendants' motions to suppress evidence obtained pursuant to a search warrant of a safety deposit box. Dkt. ##101 & 104. The government has responded to defendants' motions. Dkt. ##122, pp.12-15 & 120, p.15.


## FACTS

On December 11, 2008, the Honorable Hugh B. Scott, U.S. Magistrate Judge, issued a Search Warrant authorizing law enforcement officers to seize, examine and photograph the following items from Safe Deposit Box Number 65 located at Citizens Bank, 1893 Elmwood Avenue, Buffalo, New York:

> a) cocaine, other controlled substance, quantities of currency.
>
> b) Books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, including ecstasy [sic].
>
> c) Firearms, ammunition, financial instruments, keys to safe deposit boxes, precious metals, jewelry, and other items of value, proceeds of drug transactions, records and documents of financial transactions relating to obtaining, transferring, secreting or spending of sums of money made from engaging in narcotics trafficking.
>
> d) Records of telephone calls contained in billing statements, addresses and telephone numbers in books and papers which reflect names, addresses and telephone numbers related to drug trafficking, photographs regarding drug trafficking and drug trafficking associates.
>
> e) Paraphernalia for the packaging, diluting, cutting, weighing, processing and distributing of ecstasy [sic] or any other controlled substances, including scales, plastic bags, cutting agents and utensils.

-2-

In support of the application for the search warrant, Officer Shales Caicedo of the FBI Safe Streets Task Force affirmed that during the course of a two-year investigation of the 31 Gang, confidential sources identified Glance Ross as a distributor of large quantities of cocaine.  Based upon their investigation, United States District Judge William Skretny signed several orders authorizing the interception of electronic communications over cellular telephones being utilized by Glance Ross, among others, which confirmed Glance Ross' participation in an ongoing illegal narcotics enterprise.  Officer Shales recounted several intercepted conversations between Glance Ross and other members of the enterprise discussing cooking cocaine into crack and packaging it into smaller quantities for distribution.  Officer Shales also recounted conversations suggesting that Glance Ross purchased motor vehicles and registered them in the name of other individuals, such as Toria Hodge, purportedly to launder the proceeds of his illegal narcotics enterprise.

Officer Caciedo also recounted conversations between defendant Glance Ross and another co-defendant in this case, Marcus Chambers, on October 21, 2008, in which Glance Ross expressed concern that law enforcement were "looking at people down our way" and Chambers replied that he had also heard that law enforcement was "about to do a little round up down the way," further stating, "I guess some time next month."

Officer Shales affirmed that on November 7, 2008, Glance Ross telephoned Damone Brown who indicated that he

had inquired into the acquisition of a safe deposit box at a local bank.  BROWN further informed ROSS that ROSS's name would be included on the access list for the safe deposit box.  BROWN informed ROSS that he had a meeting on Monday at 10:00 AM with the lady at the bank.

On November 10, 2008, Glance Ross told Damone Brown to rent the safe deposit box under Brown's name because Ross did not intend to go to the bank to use the safe deposit box himself.  Glance Ross also told Damone Brown that he would have Toria Hodge bring him something.  In another telephone call moments later, Damone Brown expressed concern that the bank closed at 4:00 p.m., stating "so you gonna have to get that to her, you feel that?"  Glance Ross replied that "She got it already."  Law enforcement surveillance then observed Toria Hodge arrive at the Citizens Bank and Damone Brown exit the bank and approach Toria Hodge, who exited her vehicle with a large shopping bag containing a large box and entered the bank with Damone Brown. Citizens Bank confirmed that Damone Brown rented safe deposit box 65 for a one year term on November 10, 2008 and that Toria Hodge was also authorized to access the safe deposit box.

## DISCUSSION AND ANALYSIS

The defendants argue that the evidence obtained pursuant to the search of the safety deposit box should be suppressed because the affidavit in support of the search warrant fails to demonstrate what evidence is believed to be contained within the safety deposit box, thereby violating the requirement that search warrants describe with sufficient particularity the items to be seized.  Dkt. #101, pp.2-3 & 16.

As an initial matter, the government argues that defendant Ross fails to establish standing by articulating a legitimate privacy interest in the safe deposit box. Dkt. #122, p.12.   In any event, the government responds that Judge Scott properly determined that there was probable cause to believe, based upon intercepted communications and physical surveillance, that items relating to the defendants' drug trafficking activities were in the safe deposit box and that the warrant sufficiently identified the items to be seized.  Dkt. #122, pp.12-14.

"It has long been the rule that a defendant can urge suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993).   As there appears to be no dispute that the safe deposit box at issue was rented by Damone Brown, the Court is satisfied that he has standing to contest the legitimacy of its search.  However, there is no reason to believe that Glance Ross maintained a legitimate expectation of privacy in a safe deposit box he neither rented nor had authorization to access and no affirmation from Glance Ross claiming a property interest in the evidence seized from the safe deposit box.  *See United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (defendant cannot establish standing by relying upon the government's representations).

Turning to the merits of defendants' argument, the Fourth Amendment states unambiguously that "no Warrants shall issue, but upon probable cause,

-5-

supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.  In determining whether probable cause exists for the issuance of a search warrant, the United States Supreme Court has stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for conclud[ing] that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

        In the instant case, the affidavit before Judge Scott established probable cause to believe that evidence of defendants' narcotics enterprise had been placed within the safe deposit box.  The affidavit set forth information obtained from confidential sources and numerous telephone calls substantiating the government's contention that defendants were engaged in drug distribution and money laundering of the proceeds of that enterprise and expressed concern about law enforcement surveillance and a potential round up several weeks before the safe deposit box was rented.  Moreover, intercepted telephone conversations indicate that Glance Ross instructed Damone Brown to rent the safe deposit box but did not wish his name to be associated with it even though he provided Damone Brown, *via* Toria Hodge, with the contents he wished to protect within the safe deposit box.  The totality of these

-6-

circumstances suggest a fair probability that contraband or evidence of a crime would be found in the safe deposit box.

"By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."  *Maryland v. Garrison* 480 U.S. 79, 84 (1987).  In *United States v. Riley,* the Court of Appeals for the Second Circuit upheld a search warrant authorizing seizure of

> evidence of the offense of conspiracy to distribute controlled substances, namely cocaine, and marihuana, firearms, instrumentalities of cocaine and marihuana distribution such as scales, dilution or "cut" materials, telephone and/or address books and lists, telephone toll records

and

> records of the distribution of cocaine including records of distribution made and/or payments given or received, the investment of proceeds of drug trafficking in tangible or intangible objects and things, including but not limited to, bank records, brokerage house records, business records, safety deposit box keys or records and other items that constitute evidence of the offenses of conspiracy to distribute controlled substances and distribution of the same[.]

906 F.2d 841, 843 (2d Cir. 1990).  In reaching its decision, the Court of Appeals explained that

> In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items. *See United States v. Young*, 745 F.2d 733, 759-60 (2d Cir.

1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *see also Andresen v. Maryland*, 427 U.S. at 480-81, 96 S.Ct. at 2748-49.  In the pending case, the warrant supplied sufficient examples of the type of records that could be seized – bank records, business records, and safety deposit box records.  No doubt the description, even with illustrations, did not eliminate all discretion of the officers executing the warrant, as might have occurred, for example, if the warrant authorized seizure of the records of defendant's account at a named bank.  But the particularity requirement is not so exacting.  Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category.

It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category.  But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked "drug records."

*Id.* at 845-46; *cf. United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (authorization to search for "any other evidence relating to the commission of a crime" not sufficiently particular).

Contrary to defendants' suggestion, as in *Riley* the warrant before the Court adequately describes the items for which there was probable cause to search, *i.e.*, items related to illegal drug distribution.  Although the list of items enumerated was relatively extensive, all items appear reasonably related to the offense.  *See United States v. Washington*, 48 F.3d 73, 78 (2d Cir.) (upholding warrant authorizing seizure of

cocaine and unlawful drugs; drug paraphernalia; documents relating to illicit drug
activities; money; and firearms), *cert. denied*, 515 U.S. 1151 (1995).


## **CONCLUSION**

Based on the foregoing, it is recommended that defendant's motion to
suppress evidence obtained pursuant to a search warrant of the safety box be denied.


Therefore, it is hereby


**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of Court.


**ANY OBJECTIONS** to this Report, Recommendation and Order must be
filed with the Clerk of Court within fourteen (14) days after receipt of a copy of this
Report, Recommendation and Order in accordance with the above statute,
Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.


The district judge will ordinarily refuse to consider *de novo*, arguments,
case law and/or evidentiary material which could have been, but were not presented to
the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v.
Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

       The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

       **SO ORDERED.**

DATED:      Buffalo, New York
              January 7, 2011

                            *s/ H. Kenneth Schroeder, Jr.*
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**