**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.                **09-CR-55A(Sr)**

**GLANCE ROSS,**

    **Defendant.**

_____

### REPORT, RECOMMENDATION AND ORDER

    This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with Title 28, United States Code, Section 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #11.

    The defendant, Glance Ross ("the defendant") is charged in three counts of a six count Indictment returned against eight defendants with having violated Title 21, United States Code, Section 841, Title 21, United States Code, Section 846 and Title 18, United States Code, Section 1956. Dkt. #1. He also faces a forfeiture count (Count 5), pursuant to Title 21, United States Code, Sections 853(a)(1) and 853(a)(2). Presently before the Court is the defendant's motion to dismiss Counts 3 and 4 of the Indictment claiming "that the crimes charged in Counts 3 and 4 are unconstitutional as applied to the conduct alleged by the government in the Indictment." (Docket 89, p. 7).

    The government has filed its opposition to this motion wherein it argues that the charges alleged against the defendant in Counts 3 and 4 of the Indictment are constitutionally sound. (Docket #122).

## DISCUSSION AND ANALYSIS

**Count 3 of the Indictment:**

**The Grand Jury Further Charges that:**

Between on or about November 10, 2008, and on or about December 11, 2008, in the Western District of New York, the defendants, **GLANCE ROSS a/k/a "G", TORIA HODGE and DAMONE BROWN,** did knowingly conduct, and attempt to conduct, a financial transaction, that is, the use of a safe deposit box to hold approximately $170,000 in currency at Citizens Bank, a financial institution engaged in the activities of which affected interstate commerce, which involved the proceeds of a specified unlawful activity, that is, the distribution of cocaine, a Schedule II controlled substance and conspiracy to do so, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and that while conducting, and attempting to conduct, such financial transaction knew that the property involved in the financial transaction, that is, the said currency, represented the proceeds of some form of unlawful activity; all in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(I) and 2. (Docket #1).

**Count 4 of the Indictment:**

**The Grand Jury Further Charges that:**

Between on or about November 10, 2008 and on or about December 11, 2008, in the Western District of New York, and elsewhere, the defendants, **GLANCE**

**ROSS a/k/a "G", TORIA HODGE and DAMONE BROWN,** did knowingly, willfully and unlawfully combine, conspire and agree together with others, known and unknown, to commit an offense against the United States, that is, a violation of Title 18, United States Code, Section 1956(a)(1)(B)(I) committed in a manner set forth in Count 3 of this Indictment, the allegations of which are incorporated herein by reference; all in violation of Title 18, United States Code, Section 1956(h). (Docket #1).

The government asserts that the defendant, with the assistance of others, arranged for the rental of a safe deposit box from Citizens Bank located at 1893 Elmwood Avenue, Buffalo, New York, "a financial institution engaged in the activities of which affected interstate commerce" (Docket #1, Count 3) and that by paying a fee to the bank for the use of the safe deposit box and using the box to store $170,000 in cash, a "financial transaction" prohibited by the money laundering statute (§ 1956(c)(4)(B)) was consummated. (Docket #122, pp. 26-27).

The defendant argues that "the act of placing money in a particular location has no impact upon interstate commerce whether the money be placed in a mattress or a safety deposit box. That (sic) fact that someone paid for a box, owned by a financial institution, that in other instances engages in transactions that do affect interstate commerce is of no moment." (Docket #89, p. 4). In support of his argument, the defendant relies heavily on the Seventh Circuit decision in *United States v. Bell*, wherein the Court held:

The defendant's use of safe deposit boxes at the First Wisconsin National Bank does not fall within the scope of "transaction" as set forth in 1956(c)(3) because his use of the boxes cannot be considered a "transfer between accounts, an exchange of currency, a loan, an extension of credit, a purchase or sale of any stock, bond, certificate of deposit, or other monetary instrument. . . ."

Further, the defendant's use of the safe deposit boxes does not constitute: (1) *a payment*--no payment of any kind was made. The defendant simply put his money into a box for safekeeping and/or storage purposes. The money in the safe deposit box was not put there to make any type of payment to First Wisconsin; (2) *a transfer*--a transfer as used in the context of banking is generally defined as the "moving funds from one account to another, as from checking to savings . . . [and] moving stocks, bonds, or other securities from one owner to another, and recording the change of ownership on registration papers." *Barron's Dictionary of Banking Terms* (1st ed. 1990). The defendant's use of the First Wisconsin's safe deposit boxes for the purposes of safekeeping and/or storage of money was clearly not a transfer because the defendant did not convey any right, title, or interest in the money to the bank. The money was stored in the box only until such time as the defendant chose to remove it. At all times, the defendant retained his ownership to the money in the safe deposit box; (3) *a delivery*-Barron's defines "delivery" as the "presentment of a check or negotiable instrument, endorsed by the payee, to the paying bank." Certainly, the defendant's use of First Wisconsin's safe deposit boxes does not constitute a delivery because, as pointed out earlier, use of the safe deposit boxes did not involve any records of deposits, withdrawals, or balances as would be created for a regular bank account. Moreover, the contents did not earn interest nor were they insured.

Finally, the defendant's placing and removing of money into and from the safe deposit boxes cannot be classified as "deposits" or "withdrawals" as contemplated in §1956(c)(3). Again, we believe the Congressional intent in the plain meaning of this section reveals that the terms "deposits" and "withdrawals" refer to activities through which a banking institution keeps records of and credits and debits an individual's savings or checking account. The defendant's placing and removing of money into and from the safe

> deposit boxes did not constitute deposits or withdrawals into a savings or checking account and, therefore, the defendant's activities do not constitute "deposits" and "withdrawals" as set forth in the statute.

936 F.2d 337, 342 (7th Cir. 1991).

It is pointed out by this Court that *Bell* was decided before Congress amended 18 U.S.C. § 1956(c)(3) to include the words "use of a safe deposit box" as part of the definition of a financial "transaction." Pub. L. 102-550, § 1527(a)(2) (1992). The Court of Appeals for the Seventh Circuit expressly based its decision on a strict construction of the statute as it read at the time wherein it stated:

> It is a maxim of statutory construction that, unless otherwise defined, words should be given their ordinary, common meaning." *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085 (7th Cir. 1984) *cert. denied*, 471 U.S. 1017, 85 L. Ed. 2d 304, 105 S. Ct. 2023 (1985) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979)). Moreover, when there is a dearth of legislative history on a statute, it "strongly reinforces the view that the [statute] means nothing more than its plain language implies." *Id.* Because the defendant's activities do not fall within any of the enumerated terms in § 1956(c)(3) which define "transaction," coupled with the absence of legislative history, we believe that the defendant's use of safe deposit boxes to store money does not constitute a "transaction" under the statute. Thus, his conviction on Counts Three through Five is reversed.

*Id.* at 342.

When undertaking interpretation of a statute, the United States Supreme Court has stated that one must first determine "whether Congress has directly spoken to

the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. V. National Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984). In the case at bar, Congress has spoken to the "precise question at issue" by expressly stating that the term "transaction" as used in 18 U.S.C. § 1956 includes "use of a safe deposit box."

Although that is sufficient to bring an "end of the matter," the defendant argues that "[b]y Congress simply inserting the words 'use of a safe deposit box' in the definition of transaction doesn't change the fact as enumerated by the Seventh Circuit in *United States v. Bell*, 936 F.2d 337 (1991) that there is no nexus between the use of a safe box and interstate commerce." (Docket #89, p. 5).

The United States Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power" wherein it stated:

> First, Congress may regulate the use of the channels of interstate commerce. See, *e. g., Darby*, 312 U.S. at 114, 85 L Ed 609, 61 S Ct 451, 132 ALR 1430; *Heart of Atlanta Motel, supra*, at 256, 13 L Ed 2d 258, 85 S Ct 348 ("'[T]he authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question.'" (quoting *Caminetti* v. *United States*, 242 U.S. 470, 491, 61 L. Ed 442, 37 S Ct 192 (1917)). Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. See, *e. g., Shreveport Rate Cases*, 234 U.S. 342, (1914); *Southern R. Co.* v. *United States*, 222 U.S. 20, 56 L. Ed 72,

> 32 S Ct 2 (1911) (upholding amendments to Safety Appliance Act as applied to vehicles used in intrastate commerce); *Perez, supra*, at 150, 28 L Ed 2d 86, 91 S Ct 1357 ("For example, the destruction of an aircraft (18 U.S.C. § 32 [18 USCS § 32]), or... thefts from interstate shipments (18 U.S.C. § 659 [18 USCS § 659])"). Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *Jones & Laughlin Steel*, 301 U.S. at 37, *i. e.*, those activities that substantially affect interstate commerce, *Wirtz, supra*, at 196, n. 27, 20 L Ed 2d 1020, 88 S Ct 2017.

*United States v. Lopez*, 514 U.S. 549, 558 (1995).

The alleged use of a safe deposit box within the confines of a financial institution engaged in interstate commerce for the purpose of hiding or secreting alleged illegal drug proceeds certainly affects interstate commerce.

As the Court of Appeals for the Second Circuit has stated:

> § 1956 [of Title 18 U.S.C.] has everything "to do with commerce" (citation omitted). Money laundering is a quintessential economic activity. Indeed, it is difficult to imagine a more obviously commercial activity than engaging in financial transactions involving the profits of unlawful activity. This is particularly so where the intent of the transaction is to conceal the source of those profits or to promote the unlawful activity and thereby yield even greater economic rewards.
>
> Furthermore, money laundering is not only a commercial activity, but it "*substantially*" affects *interstate* commerce." (citing Lopez).

*United States v. Goodwin*, 141 F.3d 394, 399 (2d Cir. 1997), *cert. denied by Key v. United States*, 523 U.S. 1086 (1998) *and Moye v. United States*, 525 U.S. 881 (1998).

Further, "Section 1956 is not a free-standing statute; it criminalizes only financial transactions involving the proceeds of unlawful activity specified in § 1956(7). One such specified unlawful activity . . . is narcotics trafficking, as defined by the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* ('the Controlled Substance Act')." *Id*. at 399.

The Court of Appeals for the Second Circuit has "repeatedly held that the 'Controlled Substance Act concerns an obviously economic activity' substantially affecting interstate commerce, namely, narcotics trafficking, and [has] sustained the Act against criminal defendants' Lopez challenges." (citations omitted). *Id*. At 399.

The defendant is charged in Count 1 of the Indictment with conspiring to violate Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) all in violation of Title 21 U.S.C. § 846. The defendant's alleged use of the safe deposit box to store and hide proceeds resulting from alleged illegal drug activity "necessarily involves activity regulable by the federal government" since "drug trafficking activity clearly is a proper subject for federal regulations" and therefore, "Congress did not exceed its authority under the Commerce Clause when it enacted 18 U.S.C. § 1956." *Id*. At 399, 400.

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that defendant's motion to dismiss Counts 3 and 4 of the Indictment be in all respects DENIED.

Therefore, it is hereby

**ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the

portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

       **SO ORDERED.**

DATED:    Buffalo, New York
              January 5, 2011

                                      *S/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**